UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Angela Marie Gangnon,                      Civil No. 09-2582 (DWF/JJG)

            Plaintiff,

v.                                              **MEMORANDUM OPINION AND ORDER**

Park Nicollet Methodist Hospital and
Park Nicollet Health Services,

            Defendants.

_____

Gerald T. Laurie, Esq., and Ian S. Laurie, Esq., Laurie & Laurie, PA, counsel for Plaintiff.

Brian T. Benkstein, Esq., and Sara Gullickson McGrane, Esq., Felhaber Larson Fenlon & Vogt, PA, counsel for Defendants.

_____

This matter is before the Court on a Motion for Summary Judgment brought by Defendants Park Nicollet Methodist Hospital and Park Nicollet Health Services (Doc. No. [14]). In an order dated November 29, 2010, the Court informed the parties that it would be granting the Defendants' Motion. This Order sets forth the reasoning behind that decision.

## BACKGROUND

This case involves Plaintiff's allegations that Park Nicollet Methodist Hospital ("Methodist Hospital") violated the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), by failing to grant her an extended leave of absence in connection with

her pregnancy, and violated the Minnesota Parental Leave Act, Minn. Stat. § 181.940, *et seq.* ("MPLA"), by terminating her after she took an approved leave of absence.

Plaintiff began working at Methodist Hospital in St. Louis Park, Minnesota, in February 2000. From January 2005 to the end of her tenure, Plaintiff worked in the Methodist Health Information Management Department, where she organized information in patient charts. (Gangnon Dep. at 13-14.) Plaintiff's part-time schedule consisted of five, eight-hour work days during every two-week pay period. (*Id.* ¶ 14.) Plaintiff was subject to a written attendance policy that required her to work 97% of her scheduled shifts. (Benkstein Aff. ¶¶ 5-6, Exs. D, E.; Leither Dep. at 15, Ex. E.) Plaintiff admits that she was aware of these policies. (Gangnon Dep. at 26-29.) The attendance policy did not include absences related to FMLA leave or other authorized leaves of absence in its 97% calculation. (Benkstein Aff. Ex D. at 1, 3.)

Plaintiff was absent for a number of shifts between February 2006 and February 2007. (Benkstein Aff. ¶ 7, Ex. F.) As a result, Plaintiff was issued a "Verbal Warning" indicating that her current attendance percentage was 93.85%. (*Id.*) Plaintiff does not dispute being absent on the dates listed on the Verbal Warning form. (Gangnon Dep. at 34-5.) Plaintiff's absences were also discussed in a March 2007 Performance Review and an April 2007 Written Warning, after Plaintiff had missed another two days of work. (Benkstein Aff. ¶¶ 8-9, Exs. G, H.) At this time, Plaintiff's attendance percentage had fallen to 93.85%. (*Id*; *see also* Gangnon Dep. at 43.) The Written Warning indicated that a failure to meet the attendance expectations "will result in further disciplinary action up to and including termination of employment." (*Id.*, Ex. H.) Although Plaintiff refused to

sign the Written Warning, Plaintiff does not dispute the facts regarding her absences. (Gangnon Dep. at 42-3.)

Then, in June 2007, Methodist Hospital issued Plaintiff a three-day suspension because, with her additional absences in May 2007, Plaintiff's attendance percentage had fallen to 92.97%. (Benkstein Aff. ¶ 10, Ex. I.) In the document detailing Plaintiff's suspension, Plaintiff's supervisor, Linda Beverson, indicated: "it is my expectation and that of the department that [Plaintiff] will not call in until her attendance is at least 97%, should [Plaintiff] call in before she reaches 97% attendance percentage this would be grounds for termination." (*Id*.) Plaintiff does not dispute the facts regarding her attendance as described in the suspension document. (Gangnon Dep. at 49-50.)

In 2007, Plaintiff became pregnant with her fourth child. (Laurie Aff. ¶ 3, Ex. E "Gangnon Aff." ¶ 2.) At some point, Plaintiff and her husband learned that the child would not survive the pregnancy. (*Id*. ¶ 3.) In late June 2007, Plaintiff informed Beverson that she would be delivering her baby early and that the baby would likely die. (Gangnon Dep. at 52-3.) Plaintiff also notified Methodist Hospital's Occupational Health Department and eventually contacted The Hartford, Methodist Hospital's third-party administrator for leave issues. (*Id*. 53-4; Leither Dep. at 44.)

On July 13, 2007, Plaintiff delivered her baby, who died shortly after birth. (Gangnon Aff. ¶ 4.) Plaintiff had communicated with The Hartford to request a leave of absence pursuant to the FMLA beginning on July 13, 2007, but The Hartford denied that request. (Benkstein Aff. Ex. J.) In its letter describing the denial, The Hartford stated that Plaintiff did not meet the minimum eligibility requirements for FMLA leave because

3

she had not worked 1,250 hours in the previous twelve months. (*Id*.) Plaintiff actually had worked 948.7 hours during that twelve-month period. (Danfifer Aff. ¶ 3; Gangnon Dep. at 16-17.)

Plaintiff requested non-FMLA medical leave on a form dated July 20, 2007. (Benkstein Aff. Ex. K.) That form indicated August 31, 2007, as Plaintiff's expected return-to-work date. (*Id*.) The Hartford granted Plaintiff's leave and, in a letter dated July 20, 2007, informed Plaintiff:

> We are writing to advise you that your request for leave under the Park Nicollet Health Services leave policy and the Minnesota state family and medical leave laws has been approved for the period of 7/13/07 through 8/23/07, for a serious health condition. . . . As of 8/23/07 you will exhaust your state leave allowance of 6 weeks as calculated on a rolling 12 month basis. As a result, you may lose the protections afforded by the Minnesota state leave laws consistent with Park Nicollet Health Service's leave policy.

(Benkstein Aff. Ex. L.) On August 3, 2007, Methodist Hospital's Employee Health Nurse notified Plaintiff as follows:

> You have been out on a State of Minnesota leave from 07-13-07 through 08-23-07. These days will not be held against your attendance.
>
> This letter is to inform you that your manager will use time away against your attendance from 08-24-07 until you return to work.

(*Id*. Ex. M.) Plaintiff understood that her time away would be used against her attendance from August 24, 2007, until she returned to work. (Gangnon Dep. at 59-60.)

Plaintiff saw her doctor on August 27, 2007, and discussed requesting two additional weeks of maternity leave. (*Id*. at 60-62.) Plaintiff believed that her doctor would be providing information to Methodist Hospital about this request for an additional two weeks of leave, but Plaintiff did not know whether any such information was ever

4

received by the hospital. (*Id*. at 62-63.) Ultimately, on September 17, 2007—after Plaintiff was terminated—the doctor dictated a letter on Plaintiff's behalf indicating that the doctor was extending Plaintiff's leave. (Benkstein Aff. ¶ 15, Ex. N.)

On the same day of this doctor appointment, Plaintiff asserts that she left voicemail messages with Beverson or Deborah Margittay, who had taken over as Plaintiff's supervisor in 2007, and Deb Carlson in occupational health, indicating that her leave had been extended for two weeks. (*Id*. at 64-65.) Beverson and Margittay contend that they did not receive any message from Plaintiff. (Beverson Aff. ¶ 2; Margittay Aff. ¶ 2.) Aside from the phone messages that she left, Plaintiff never spoke with her supervisors or anyone in occupational health, whether on the phone or in person, about extending her leave of absence past August 23, 2007. (Gangnon Dep. at 65-69.) She also did not send an e-mail to her supervisors about the time that she intended to take off after August 23, 2007. (*Id*. at 67-68.)

Plaintiff did not report to work on August 31 and September 1-4, 2007, as she had been scheduled. (See Danfifer Aff. (Doc. 19) Ex. 1 at 16.) After Plaintiff's third day of absence, Methodist Hospital's Human Resources Department attempted to contact Plaintiff, but the phone number that they had for Plaintiff was disconnected. (Leither Dep. at 10-12.)

Methodist Hospital's attendance policy states that "Employees who are absent from work and are not in daily contact with their department leader for three consecutive days will be considered to have voluntarily terminated." (Benkstein Aff. ¶ 5, Ex. D.) On

5

September 5, 2007, the Human Resources Department sent a letter to Plaintiff, notifying her that she had been terminated for job abandonment. (Benkstein Aff. ¶ 17, Ex. P.)

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir.1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I. FMLA

As a preliminary matter, the Court finds that Plaintiff did not work a sufficient number of hours to qualify for FMLA leave. Under the FMLA, an "eligible employee" is defined as an employee who has been employed . . . for at least 1,250 hours of service with [the employer with respect to whom leave is requested] during the previous 12-month period." 29 U.S.C.A. § 2611(2)(A). It is undisputed that Plaintiff worked 948.7 hours in the twelve months prior to her request for FMLA leave. (Danfifer Aff. ¶ 3, Ex. 1.) Because Plaintiff did not qualify for FMLA leave at the time she made her request, Plaintiff's FMLA claim is dismissed.[1]

## II. MPLA

Plaintiff asserts that Methodist Hospital violated the MPLA by denying her reinstatement after her leave and by terminating her for making the MPLA leave request. Plaintiff's MPLA claim fails in both regards.

The MPLA provides that "[a]n employer must grant an unpaid leave of absence to an employee who is a natural or adoptive parent in conjunction with the birth or adoption of a child." Minn. Stat. § 181.941, subd. 1. The length of leave is determined by the employee, but may not exceed six weeks, unless agreed to by the employer. *Id.* An employer may not retaliate against an employee for requesting or obtaining MPLA leave.

---

[1] The Court also finds no merit to Plaintiff's arguments that Plaintiff was entitled to FMLA leave because Methodist Hospital mistakenly wrote "FMLA" on a termination form, or because Beverson mistakenly referred to Plaintiff's leave as "FMLA" during her deposition in this litigation. Plaintiff has set forth no evidence that Methodist Hospital told Plaintiff that she was entitled to FMLA before or during her leave. In fact, the hospital directly communicated to Plaintiff that she was not eligible for FMLA leave. (Benkstein Aff. ¶ 11, Ex. J.)

*Id.*, subd. 3. The MPLA further provides that an employee returning from a leave of absence "is entitled to return to employment in the employee's former position or in a position of comparable duties, number of hours, and pay." Minn. Stat. § 181.942.

The record here demonstrates that Plaintiff was given a six-week leave, as mandated by the MPLA, after the birth of her child. Plaintiff was scheduled to return to work in her former position, but was terminated for failing to report to work as scheduled after her leave expired. Despite Plaintiff's assertions that her doctor extended her leave, the hospital never agreed to extend Plaintiff's leave beyond six weeks. Plaintiff offers no support for her contention that a doctor could unilaterally extend a patient's MPLA leave beyond the six-week mandate without the employer's approval.

Moreover, the record does not support Plaintiff's assertions that the hospital retaliated against her for requesting or obtaining MPLA leave. The MPLA does not define retaliation, but the prohibition against retaliation also applies to the Minnesota Human Rights Act, Minn. Stat. § 363A.15, and the Minnesota Whistleblower Act, Minn. Stat. § 181.932, subd. 1. *See Vosdingh v. Qwest Dex, Inc.*, Civ. No. 03-4284, 2005 WL 914732, at *12 (D. Minn. 2005) (vacated on other grounds). Under Minnesota law, to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in statutorily-protected conduct; (2) she experienced an adverse employment action; and (3) a causal connection exists between the two. *Hubbard v. United Press Intern., Inc.*, 330 N.W.2d 428, 444 (Minn. 1983). If a plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to show a legitimate,

nondiscriminatory reason for its action. *Id*. Then, the plaintiff must establish that the proffered nondiscriminatory reason was mere pretext for retaliation. *Id*.

Here, Plaintiff cannot establish a causal link between her decision to take the statutorily-protected MPLA leave and Methodist Hospital's determination to terminate her. The record demonstrates that Plaintiff had an excessive number of absences well prior to requesting or obtaining her statutorily-protected MPLA leave. During her leave, she was notified that additional absences would be counted against her attendance. The record offers no support for Plaintiff's assertion that her termination was causally connected to her MPLA leave. The record before the Court demonstrates that Plaintiff was not retaliated against for the MPLA leave. Rather, Plaintiff was terminated for excessive absences that violated Methodist Hospital's attendance policy.

Moreover, Plaintiff cannot establish pretext. Plaintiff was repeatedly warned about her excessive absences prior to taking her MPLA leave. She was told specifically that any time taken beyond August 23, 2007, would be held against her attendance. Nothing in the record refutes Methodist Hospital's position that the termination was due to her attendance issues—in fact, Plaintiff does not dispute that she was absent all of the times in question. And even assuming that Plaintiff did leave messages for her supervisors notifying them that she would not return, nothing required Methodist to extend her leave. For these reasons, Plaintiff's MPLA claim fails.

Therefore, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. No. [14]) is **GRANTED**.

9

2. Plaintiff's Complaint (Doc. No. [1]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: January 26, 2011         s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge